2022-2181

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant,*

WHEATLAND TUBE COMPANY,

*Defendant-Appellant.*

Appeal from The United States Court of International Trade in
Case No. 1:20-cv-00133-SAV, Judge Stephen A. Vaden

# OPENING BRIEF OF DEFENDANT-APPELLANT WHEATLAND TUBE COMPANY

Roger B. Schagrin
Christopher T. Cloutier
Luke A. Meisner
**SCHAGRIN ASSOCIATES**
900 7th Street NW #500
Washington, DC 20001
(202) 223-1700

*Counsel to Wheatland Tube Company*

Dated: November 21, 2022

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-2181

**Short Case Caption** Saha Thai Steel Pipe Public Company Limited v. US

**Filing Party/Entity** Wheatland Tube Company

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/21/2022

Signature: /s/ Roger B. Schagrin

Name: Roger B. Schagrin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Wheatland Tube Company | | Zekelman Industries, not publicly traded |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Paul Jameson, formerly of Schagrin Associates | | |
| John Bohn, formerly of Schagrin Associates | | |
| Geert De Prest, formerly of Schagrin Associates | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Blue Pipe Steel Center Co., Ltd. v. US (CIT No. 21-81). | Saha Thai Steel Pipe Public Company Limited. v. US (CIT 21-49) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. STATEMENT OF RELATED CASES ....... 1

III. STATEMENT OF JURISDICTION ....... 1

IV. STATEMENT OF ISSUES ....... 2

V. STATEMENT OF THE CASE ....... 3

VI. STATEMENT OF FACTS ....... 5

A. Pipe Classifications ....... 5

B. The Original Proceedings and Order ....... 6

C. The Scope Proceeding ....... 9

D. The Remand ....... 11

1. *Saha Thai I* ....... 11

2. Commerce's Remand Redetermination ....... 14

3. *Saha Thai II* ....... 15

VII. SUMMARY OF THE ARGUMENT ....... 16

VIII. ARGUMENT ....... 19

A. The Standard of Review ....... 19

B. Commerce's Original Scope Ruling Should Be Upheld for Being Supported by Substantial Evidence and Otherwise in Accordance with Law ....... 20

C. The CIT Impermissibly Relied on (k)(1) Factors to Reject Commerce's Scope Determination ........................................21

1. The CIT should not have considered so-called (k)(1) factors.......................................................................................21

2. Saha Thai's dual-stenciled pipe is simultaneously standard pipe and line pipe ...............................................23

3. The CIT's finding that dual-stenciled pipe is and can only be "line pipe" is not based on substantial evidence..................25

a. The withdrawal of the petition with respect to line pipe from Thailand did not create an exclusion for dual-stenciled pipe ...................................................................25

b. CBP rules do not alter Commerce's published scope definitions..........................................................................27

c. Safeguard proceedings do not alter Commerce's published scope definitions ..........................................................28

d. Characterizations of scope definitions in ITC reports do not alter Commerce's published scope definitions ...................29

D. The ITC Made A Valid Injury Determination Based On The Scope Of The Investigation........................................................34

IX. CONCLUSION..........................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Shrimp Trade Action Committee v. United States*,
637 F.Supp.2d 1166 (Ct. Int'l Trade 2009) ....................................26

*Allegheny Ludlum Corp. v. United States*,
116 F. Supp. 2d 1276 (Ct. Int'l Trade 2000) ..........................30-31, 35

*Am. Silicon Techs. v. United States*,
334 F.3d 1033 (Fed. Cir. 2003) ..............................................19

*Diversified Prod. Corp. v. United States*,
572 F. Supp. 883 (Ct. Int'l Trade 1983) ....................................26

*Duferco Steel Inc. v. United States*,
296 F.3d 1087, 1097 (Fed. Cir. 2002)........................................22

*Fedmet Resources Corp. v. United States*,
755 F.3d 912 (Fed. Cir. 2014) ............................................ 20, 26

*Global Commodity Group LLC v. United States*,
709 F.3d 1134 (Fed. Cir. 2013) ............................................. 20

*Hosiden Corp. v. United States*,
85 F.3d 1561 (Fed. Cir. 1996) ............................................... 35

*King Supply Co. LLC v. United States*,
674 F.3d 1343 (Fed. Cir. 2012) ............................................. 20

*Meridian Prod. v. United States*,
890 F.3d 1272 (Fed. Cir. 2018) ............................................. 12

*Mid Continent Nail Corp. v. United States*,
725 F.3d 1295 (Fed. Cir. 2013) ............................................. 20

*NTN Bearing Corp. of Am. v. United States*,
747 F. Supp. 726 (Ct. Int'l Trade 1990) ................................... 26

*Novosteel SA v. U.S., Bethlehem Steel Cor.*,
284 F.3d 1261 (Fed. Cir. 2002) ………………………………………..… 27

*OMG Inc. v. United States*,
972 F.3d 1358 (Fed. Cir. 2020) ………………………………………..… 21

*Peer Bearing Co.-Changshan v. United States*,
766 F.3d 1396 (Fed. Cir. 2014). ………………………………………..…19

*Saha Thai Steel Pipe Public Company, Ltd. v. United States*,
2022 WL 3681263 (Ct. Int'l Trade Aug. 25, 2022)…………………..…*passim*

*Saha Thai Steel Pipe Public Company, Ltd. v. United States*,
547 F.Supp.3d 1278 (Ct Int'l Trade 2021)……………………….…… *passim*

*Sandvik Steel Co. v. United States*,
164 F.3d 596 (Fed. Cir. 1998) ..……………………………………..… 20

*Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*,
961 F. Supp. 2d 1291 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1351
(Fed. Cir. 2015) ……..……………………………………………..… 34, 35

*Smith Corona Corp. v. United States*,
915 F.2d 683 (Fed. Cir. 1990) ..……………………………………..… 27

*Tak Fat Trading Co. v. United States*,
396 F.3d 1378 (Fed. Cir. 2005) ………………………………………..… 21

*Torrington Co. v. United States*,
747 F. Supp. 744 (Ct. Int'l Trade 1990) ……………………………..…35

*United Steel and Fasteners, Inc. v. United States*,
947 F.3d 794 (Fed. Cir. 2020) ...……………………………………..…20

**Statutes**

28 U.S.C. § 1295(a)(5) …..……………………………………………..…1

19 U.S.C. § 2252 …...……………………………………………………..… 14

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................ 19

**Administrative Materials**

*Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand; Initiation of Antidumping Duty Investigation*, 59 Fed. Reg. 12,068 (Dep't Commerce Mar. 27, 1985) ........................6

*Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand, Inv.*, No. 701-TA-253 (Final), USITC Pub. 1810 (Feb. 1986) ........................8

*Certain Welded Carbon Steel Pipes and Tubes From Thailand and Venezuela,* Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680 (April 1985) ..........................................5-6

*Circular Welded Carbon Steel Pipes and Tubes From Thailand; Final Determination of Sales at Less Than Fair Value*, 51 Fed. Reg. 8,384 (Dep't Commerce Jan. 27, 1986) .......................... 7

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) ........................................ 12, 32

**Regulations**

19 C.F.R. § 351.225 ........................................................ *passim*

## I. INTRODUCTION

On behalf of Defendant-Appellant Wheatland Tube Company ("Defendant-Appellant" or "Wheatland"), we respectfully submit this opening brief in accordance with Federal Rule of Appellate Procedure 28, Federal Circuit Rule 28.

## II. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendant-Appellant is unaware of any other appeal in or from the same civil action in the U.S. Court of International Trade ("CIT") that was previously before this Court or any other appellate court. Counsel is aware of two cases pending before the CIT that could be affected by this appeal: *Blue Pipe Steel Center Co., Ltd. v. United States* (CIT No. No. 21-00081) and *Saha Thai Steel Pipe Public Company Ltd. v. United States* (CIT No. 21-00049).

## III. STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1295(a)(5), this Court possesses subject matter jurisdiction over the appeal from the final judgment of the CIT entered on August 25, 2022. *Saha Thai Steel Pipe Public Company, Ltd. v. United States*, No. 20-00133, 2022 WL 3681263 (Ct. Int'l Trade Aug. 25, 2022) ("*Saha Thai II*").

Appx00003-00028.[1] On September 2, 2022, Defendant-Appellant Wheatland timely filed a notice of appeal. Appx00074.

## IV. STATEMENT OF ISSUES

1. When an imported product unambiguously meets the physical characteristics and industry specifications for the subject merchandise as defined in the scope of an antidumping duty order, can the CIT consider the additional materials specified in 19 C.F.R. § 351.225(k)(1)?
2. Is an imported product that unambiguously meets the description of subject merchandise in an antidumping duty order, in terms of both physical characteristics and the specified industrial standard, nonetheless excluded from that order if that product is concurrently certified as meeting a second industrial standard, where the scope contains no exclusion for products made to both standards?
3. Can characterizations of antidumping and countervailing duty scope definitions in U.S. International Trade Commission ("ITC") publications create an exclusion to a particular antidumping duty order where the scope definition for that order as published by the U.S. Department of Commerce ("Commerce") contains no such exclusion?

---

[1] "Appx__" refers to pages of the Joint Appendix.

4. Whether the rules of U.S. Customs and Border Protection ("CBP") regarding the appropriate tariff classification of a product can remove that product from the scope of an antidumping duty order if CBP's designated classification does not appear in the scope definition, but the product otherwise meets the physical characteristics in the scope definition?
5. Does a President's decision to include products certified as meeting multiple industrial standards in safeguard relief under the Trade Act of 1974 determine whether that product is covered by the scope of an antidumping duty order that specifies only one industrial standard but contains no exclusion for products meeting multiple standards?

## V. STATEMENT OF THE CASE

Following a scope inquiry, Commerce found that certain steel pipes exported by Saha Thai Steel Pipe Public Company Limited ("Saha Thai") were covered by the scope of the order on Circular Welded Pipe ("CWP") from Thailand (the "Order"). *See* Final Scope Ruling, Appx40762-40780. In doing so, Commerce found that Saha Thai's pipe met the physical characteristics of the scope description. In addition, Saha Thai's products were certified as "standard pipe" as specified in the scope. Commerce found the fact that the pipe was also being concurrently certified as "line pipe" did not remove the pipe from the scope

because there was no exclusion for such dual-certified pipe in the Order on CWP from Thailand – unlike the explicit exclusions for such dual-certified pipe in orders on CWP from certain other countries.

Saha Thai appealed. The CIT disagreed with Commerce. While the CIT did not dispute that Saha Thai's products met the physical characteristics of the scope description, the CIT relied on the factors in 19 C.F.R. § 351.225(k)(1) to find the pipe was excluded from the scope. *See Saha Thai Steel Pipe Public Company, Ltd. v. United States*, 547 F. Supp. 3d 1278 (Ct Int'l Trade 2021) ("*Saha Thai I*"). The CIT remanded the case to Commerce to issue a ruling consistent with the CIT's reasoning. *Id*.

On remand, under protest, Commerce found that Saha Thai's CWP certified as meeting an industry standard for "standard pipe" and meeting the physical characteristics of the scope of the Order on CWP from Thailand was nonetheless excluded from the scope of the Order because that same pipe was concurrently certified to an industrial standard for "line pipe." *See* Final Results of Redetermination Pursuant to Court Remand, Oct. 16, 2021 ECF No. 58 ("Remand Results") Appx00046-00073. The CIT upheld Commerce's Remand Determination. *See Saha Thai II*. This appeal followed.

## VI. STATEMENT OF FACTS

### A. Pipe Classifications

In the United States, steel pipes and tubes are classified in various ways. *See generally Certain Welded Carbon Steel Pipes and Tubes From Thailand and Venezuela,* Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680, at A-5 (April 1985) ("ITC Preliminary Determination"), Appx10121. One way to classify pipe is by the method of manufacturing, which divides steel pipes and tubes into two categories: welded and seamless. *See id*. Each of those two categories can be further divided based on grades or properties of the material: carbon, heat-resisting, stainless, or other alloy. *See id*. Another way is to classify pipes and tubes is based on their shapes: circular, square, or rectangular cross section. *See id*. at A-6, Appx10122. Yet another way of classification is to categorize based on end uses:

> (1) Standard pipes and tubes are intended for the low-pressure conveyance of water, steam, natural gas, air, and other liquids and gases in plumbing and heating systems, air-conditioning units, automatic sprinkler systems, and other related uses. They may also be used for light load-bearing or mechanical applications, such as for fence tubing. These steel pipes and tubes may carry fluids at elevated temperatures and pressures but may not be subjected to the application of external heat. They are most commonly produced to [American Society for Testing & Materials (ASTM)] specifications A-120, A-53, and A-135.
>
> (2) Line pipes and tubes are used for the transportation of gas, oil, or water, generally in pipeline or utility distribution systems. They are most commonly produced to [American Petroleum Institute (API)]

specification 5L.

*See id.*[2]

Certain pipe products with the exact same method of manufacture, materials, shape, dimensions, and other physical characteristics may be certified for both standard pipe end uses and line pipe end uses. Thus, a single pipe may be stenciled with both the ASTM specifications for standard pipe and the API specification for line pipe. This case concerns such "dual-stenciled" pipe. Dual-stenciled pipe, sometimes referred to as dual-stenciled standard and line pipe, conforms to the industry standards for both standard pipe and line pipe.

### B. The Original Proceedings and Order

In 1985, a coalition of domestic producers filed antidumping petitions targeting, *inter alia*, "Certain Welded Carbon Steel Pipe and Tube Products from Thailand." *See* Saha Thai Scope Comments (Att. 2: *Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand; Initiation of Antidumping Duty Investigation*, 59 Fed. Reg. 12,068 (Dep't Commerce Mar. 27, 1985)), Appx40038-40040. The scope proposed in the petition initially included all "small diameter circular welded carbon pipes and tubes," which encompassed both

---

[2] Classifying pipes and tubes based on their end uses yields other categories as well, such as mechanical tubing and pressure tubing. *See generally* ITC Preliminary Determination, USITC Pub. 1680, at A-6, Appx10122. This case does not involve those categories.

standard pipe and line pipe, but the domestic industry "withdrew" the portion of the petition relating to "line pipe" from Thailand in light of the lack of line pipe production in Thailand at that time. *See* Saha Thai Scope Comments (Att. 14: Letter dated March 14, 1985 from Petitioners Regarding Partial Withdrawal of Petition (Mar. 14, 1985)), Appx40612-40613. Notably, while the petition was withdrawn with respect to "line pipe," it was not withdrawn with respect to any standard pipe made to ASTM specifications that may also be dual-stenciled as meeting API line pipe specifications. Furthermore, while the domestic industry withdrew the petition as it related to line pipe, the physical description of the subject merchandise in the scope remained unchanged. Moreover, the scope was *not* amended to exclude line pipe or dual-stenciled pipe that otherwise meets the physical description of the scope.

Commerce eventually determined that CWP from Thailand was being, or was likely to be, sold in the United States at less than fair value. *See Circular Welded Carbon Steel Pipes and Tubes From Thailand; Final Determination of Sales at Less Than Fair Value*, 51 Fed. Reg. 8,384 (Dep't Commerce Jan. 27, 1986). Appx40047-40050. Commerce defined the scope as follows:

> certain circular welded carbon steel pipes and tubes, also known as "standard pipe" or "structural tubing," which includes pipe and tube with an outside diameter of 0.375 inch or more but not over 16 inches, or any wall thickness, as currently provided in items 610.3231, 610.3234, 610.3241, 610.3242, 610.3243, 610.3252, 610.3254,

> 610.3256, 610.3258, and 610.4925 of the Tariff Schedule of the United States Annotated (TSUSA).

*Id.* at 40047. For its part, the ITC found that standard pipe and line pipe constituted separate domestic like products (although the portions of the petition relating to line pipe from Thailand were withdrawn, similar line pipe provisions were not withdrawn for the other respondent country) and made an affirmative injury determination with respect to imports of "standard pipes" with the requisite dimensions from Thailand. *Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand,* Inv. No. 701-TA-253 (Final), USITC Pub. 1810 (Feb. 1986), Views at 5. Appx40064.

Following the 1989 conversion from the TSUSA to the Harmonized Tariff Schedule of the United States, Commerce revised certain aspects of the scope definition so that it reads as follows:

> Imports covered by this review are certain circular welded carbon steel pipes and tubes with an outside diameter of 0.375 inch or more but not exceeding 16 inches, of any wall thickness. These products, which are commonly referred to in the industry as "standard pipe" or "structural tubing" are hereinafter designated as "pipes and tubes." The merchandise is classifiable under the Harmonized Tariff Schedule of the United States (HTSUS) item numbers 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30,5040, 7306.30.5055, 7306.30.5085 and 7306.30.5090. Although the HTSUS subheadings are provided for convenience and purposes of U.S. Customs and Border Protection (CBP), the written description of the merchandise subject to the order is dispositive.

*See Saha Thai I,* 547 F. Supp. 3d at 1284, Appx00034. Thus, the updated scope:

- changed the phrase "also known as 'standard pipe'" to "commonly referred to in the industry as 'standard pipe,'"
- updated the tariff classifications, and
- added language explaining that the tariff classifications were for the convenience of CBP and not dispositive.

The updated definition did not alter the description of the physical characteristics of subject pipe.

**C. The Scope Proceeding**

Saha Thai has historically shipped large volumes of steel pipe to the United States that fell within the scope of the Order. *See* Commerce Memorandum Placing Documents on Record (Dec. 6, 2021) at Att. 1 p. 3, Appx10172. In the final results of the administrative review of the Order for the 2016-2017 review period, Saha Thai's dumping margin increased from the low single digits to approximately 28 percent. *Id.* at 6, Appx10176. Around the same time, Saha Thai ceased shipping steel pipe bearing a single stencil for standard pipe to the United States and began shipping pipe that was dual-stenciled as complying with specifications for both standard pipe and line pipe. *Id.* at Att. 1, p. 5. Appx10175.

After the shift in Saha Thai's exports to the United States, certain domestic producers requested that Commerce examine whether Saha Thai was circumventing the Order with dual-stenciled pipe. On July 29, 2019, instead of pursuing a circumvention inquiry, Commerce self-initiated a scope inquiry under

19 C.F.R. § 351.225(b) to determine whether Saha Thai's "dual-stenciled" pipe is within the scope of the Order. Commerce Initiation of Scope Inquiry (July 29, 2019), Appx40000-40001. Following certain complaints from Saha Thai, Commerce issued a second initiation notice on November 22, 2019. *See* Memorandum from Commerce re: Scope Inquiry Self-Initiation (Nov. 22, 2019), Appx40631-40635.

On February 24, 2020, Commerce preliminarily determined that standard pipe that is also certified as complying with specifications for line pipe is subject to the Order. *See* Preliminary Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe (Dep't Commerce Feb. 24, 2020) ("Preliminary Scope Ruling"), Appx40679-40686. There was no dispute that Saha Thai's pipe met the physical characteristics of the scope. The ruling instead focused on whether the fact that the pipe was dual-stenciled removed it from the scope of the Order. *Id*. at 6-7, Appx40684-85. In making its determination, Commerce noted that the Thai Order was unlike later orders on CWP from other countries, where dual-stenciled pipe had been an issue in the underlying investigations. *Id*. In those later cases, the scope contained explicit exclusions for such dual-stenciled pipe: "standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is not included in these orders." *Id*. at 7 n. 40, Appx40685. Commerce also noted that whether an importer classified the

merchandise under the HTS codes for line pipe for Customs purposes "has no bearing" on whether that pipe was subject to the Thai Order. *Id.*

Commerce's determination remained unchanged in the final scope ruling issued on June 30, 2020. *See* Final Scope Ruling, Appx40762-40780. Commerce again explained:

> Commerce further rejects Saha Thai's assertion that "all" line pipe, including dual-stenciled standard and line pipe, is not covered by the scope of the Order. Unlike the AD orders covering similar merchandise (e.g., from Mexico or Venezuela), the CWP from Thailand Order does not explicitly exclude dual-stenciled standard and line pipe. Moreover, in contrast to the investigations which resulted in the 1992 Standard Pipe Orders, and contrary to Saha Thai's claims, neither the Final LTFV Determination nor the ITC Final Injury Determination address dual-stenciled standard and line pipe. Commerce finds that Saha Thai's construct that dual-stenciled standard and line pipe are not covered by the scope of the Order because line pipe is not covered by the scope of Order lacks merit. Simply because a certain product is certified as line pipe does not result in it being not certified as standard pipe. Stated differently, if a certain product is certified as standard pipe, then it is standard pipe regardless of whether it is also certified as line pipe.

*See* Final Scope Ruling, Appx40775 (internal citations omitted).

**D. The Remand**

*1. Saha Thai I*

Saha Thai appealed Commerce's Final Scope Ruling to the CIT. In its initial opinion, the CIT held that Commerce's determination "constitutes an unlawful expansion of the scope of the underlying order" and remanded that issue to Commerce for reconsideration. *Saha Thai I*, 547 F. Supp. 3d at 1281, Appx00032.

In its analysis, the CIT did not question Commerce's finding that Saha Thai's pipe met the physical characteristics of the scope of the Order. Instead, the CIT found that the written scope of the Order was ambiguous with respect to whether pipe stenciled to two industrial standards was covered because the order did not define standard pipe or reference dual-stenciled pipe. *Id*. at 1294, Appx00039. Because the CIT found that the language of the scope itself was not dispositive, the CIT proceeded to examine the scope's language within the context of the guidelines contained in 19 C.F.R. § 351.225(k)(1) (2020).[3] *Id*. *See also Meridian Prod. v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018).

The CIT observed, among other things, that the original petition was withdrawn with respect to line pipe from Thailand, and the tariff classifications relevant to line pipe were removed from the scope definition. *Saha Thai I*, 547 F.

---

[3] In 2021, Commerce finalized changes to its regulations that govern antidumping and countervailing duty proceedings. *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021). These changes included modifications to 19 C.F.R. § 351.225, the regulation that covers Commerce's procedures and analytical framework for scope inquiries. However, the modifications to 19 C.F.R. § 351.225 do not apply to this case because they went into effect *after* Commerce self-initiated the scope inquiry on Saha Thai's dual-stenciled pipe prior effective date of the final rulemaking. *Id.* at 52,300.19 C.F.R. § 351.225(k)(1)(i) currently says that certain sources "may be taken into account" by the Secretary. At the time of the agency's scope determination, however, the applicable regulation said the sources "*will* be taken into account." *See* 19 C.F.R. § 351.225(k)(1)(i) (2020) (emphasis added).

Supp. 3d at 1295, Appx00041. The CIT also noted that the ITC's injury determination did not reference dual-stenciled pipe, and stated that "the ITC has never conducted an injury investigation, nor made an injury determination, on pipes imported from Thailand that are dual-stenciled, or obtain an API stencil, regardless of whether those pipes also have an ASTM stencil." *Id.* at 1295, Appx00042. In addition, the CIT noted that the ITC in the original determination treated standard pipe and line pipe as separate domestic like products (although the petitioners withdrew line pipe from the petition with respect to Thailand, there was no such withdrawal for another country subject to the Commission's investigation). *Id*. at 1296, Appx00042.

The CIT also reviewed statements made in reports accompanying the ITC's five-year "sunset" reviews involving antidumping and countervailing duty orders on various types of steel pipe from various countries, which were combined into single ITC proceedings for administrative efficiency. *Id.*; *see also id.* at 1285-1286, Appx00034-00035. In so doing, the CIT cited discussion in one review indicating that the Order on CWP from Thailand was unusual because it contained no express exclusion for line pipe or other pipe varieties commonly excluded in later cases. *Id.* at 1285, Appx00034. The CIT also took note of several statements in the ITC reports that dual-stenciled standard and line pipe would be entered into the United States under tariff classifications for line pipe. *See, e.g., id.* at 1292, 1294

Appx00039, 00041. In addition, the CIT noted statements that Korean exporters avoided antidumping duties under the order on CWP from Korea by exporting dual-stenciled pipe. *Id*. at 1297, Appx00043.

The CIT further observed that, in the third and fourth sunset reviews of the orders on pipe from countries including Thailand, the ITC stated that dual-stenciled pipe is not within the scope of the orders. *Id*. at 1286, Appx00035. The CIT also referenced statements in ITC reports that dual-stenciled standard and line pipe had been considered line pipe for purposes of the "safeguard" duties President Clinton imposed in 2000 under section 202 of the Trade Act of 1974, as amended (the "Trade Act") (19 U.S.C. § 2252). *Id*. at 1285, Appx00035.

Finally, the CIT rejected as "not (k)(1) materials" the "isolated examples" provided by Wheatland and the Defendant United States of instances in which Commerce referred to dual-stenciled pipe as standard pipe in the exclusionary language from other CWP scope definitions. *Id*. at 1298-1299, Appx00043-00044.

2. Commerce's Remand Redetermination

In its remand determination, Commerce found, under protest, that dual-stenciled pipe was not subject to the Order. *See* Remand Results, Appx00046-00073. Notwithstanding its decision, Commerce observed that several of the documents and arguments on which the CIT relied were not submitted in the administrative proceeding below and thus not part of the record on which

Commerce based its original decision. *Id*. at 14-16, Appx00058-00059. Commerce also observed that while the CIT's decision focused on the absence of an injury determination for dual-stenciled standard and line pipe, the pipe at issue was certified as standard pipe and met the physical description of that product in the scope definition, and was thus the same as the standard pipe underlying the ITC's injury determination. *Id*. at 17-18, Appx00059-00061. Commerce also disputed that the cited statements in the later ITC reviews that line pipe was excluded from the scopes of multiple CWP orders could be anything more than a generalization in light of the lack of exclusionary language in certain orders, including the one at issue here. *Id*. at 19, Appx00064.

*3. Saha Thai II*

The CIT affirmed Commerce's Remand Redetermination, stating that the ITC "consistently identifies dual-stenciled pipe as line pipe, not standard pipe." *Saha Thai II*, Appx00024. The CIT continued that, as explained in one ITC review, "dual stenciled pipe meets both line pipe and CWP specifications but enters as line pipe for customs purposes." *Id*. at Appx00023. The CIT also reasoned that, if "dual-stenciled pipe were standard pipe … then it would not have been subject to President Clinton's safeguard tariffs" on line pipe. *Id*. at Appx00024. In closing, the CIT again repeated that "dual-stenciled pipe is line pipe not standard pipe." *Id*. at 10026.

This appeal followed.

## VII. SUMMARY OF THE ARGUMENT

Commerce's original scope ruling was supported by substantial evidence and otherwise in accordance with law. The scope of the Order defines the physical characteristics of subject merchandise and specifies that it should be "standard pipe." Unlike orders on CWP from certain other countries, the Thai Order does not provide any exclusion for standard pipe that also meets industry specifications for line pipe. There is no dispute that the pipe at issue met the physical characteristics specified in the scope of the Order and was made to an industrial specification for standard pipe. Consequently, Commerce was correct in finding Saha Thai's product to be within the scope of the Order.

The CIT nonetheless found ambiguity in the scope and proceeded to examine a variety of sources other than the written scope language to determine whether dual-stenciled pipe was covered by the Order. In particular, the CIT considered CBP rules providing that dual-stenciled pipe should be entered under the more specific tariff classifications for line pipe to mean that a pipe certified as meeting industry specifications for both standard and line pipe could no longer be considered standard pipe. It is well-settled, however, that CBP's classification of an imported good has no bearing on whether that good is subject to an antidumping duty order, which is determined by the written scope of the order.

The CIT also observed that petitioners in the original investigation initially asked for an investigation of both standard and line pipe, but withdrew their allegations with respect to line pipe due to the apparent absence of line pipe production in Thailand. The CIT considered that this withdrawal created an exclusion for line pipe – including otherwise subject standard pipe that is also certified to a line pipe standard. To reach this conclusion, the CIT ignored that it is Commerce, not petitioners, that defines the scope, and that the withdrawal did not result in any change to the written scope defining the physical characteristics of the subject pipe. The CIT was also wrong that the absence of references to tariff classifications pertaining to line pipe in the scope of the Order means that line pipe cannot be subject merchandise if it otherwise meets the terms of the scope. The Order is, in fact, explicit that the tariff classifications in it are for the "convenience and purposes" of CBP and that the written description of the scope "is dispositive."

The CIT also relied on the inclusion of dual-stenciled pipe in a safeguard proceeding targeting line pipe under the Trade Act of 1974 to support its conclusion that dual-stenciled pipe was no longer standard pipe and could only be considered line pipe. In the same way that CBP rules do not affect an antidumping duty order's definition of scope, however, how a product is treated in a safeguard proceeding says nothing about whether that product is subject to a particular antidumping duty order.

The CIT also erred when it elevated characterizations of the scope of multiple orders on CWP from various countries, which had varying scopes, over the actual language of the Order on CWP from Thailand. In particular, the CIT relied on statements in the two most recent ITC five year "sunset" reviews covering multiple pipe products from various countries that all orders on CWP excluded pipe that is dual-stenciled. These statements by the ITC were either intended as generalizations or were simply inaccurate. While many orders on CWP do exclude dual-stenciled pipe, the written scope of the Order at issue here, Commerce's original scope ruling, and earlier ITC publications make clear that the Order on CWP from Thailand is not one of them. ITC's characterizations of multiple pipe orders are demonstrably inaccurate and, regardless, cannot create an exclusion in a particular order that contains no such exclusion.

The CIT's dismissal of scope definitions from orders on CWP from other countries showing that (1) standard pipe also certified to a line pipe specification can be referred to as "standard pipe," and (2) certain orders contain explicit exclusions for dual-stenciled pipe not present in the Thai Order demonstrate that the CIT failed to adequately consider information detracting from its conclusions.

Finally, the CIT's conclusion that the ITC's original investigation did not consider dual-stenciled pipe and therefore dual-stenciled pipe cannot be subject to the Order ignores that dual-stenciled pipe is made to a standard pipe specification

and is thus identical to the pipe considered by the ITC. It also ignores that the scope of an antidumping duty order need not enumerate every possible permutation of merchandise that falls within the definition of the scope. Moreover, the CIT's observation that the ITC considered standard pipe and line pipe to be separate like products is also of no moment. The ITC's consideration of domestic like products serves a different statutory purpose than a scope inquiry, and the results of the distinct inquiries may differ.

For all of these reasons, This Court should reverse the judgment of the CIT.

## VIII. ARGUMENT

### A. The Standard of Review

This Court will "review a decision of the Court of International Trade evaluating an antidumping determination by Commerce by reapplying the statutory standard of review that the Court of International Trade applied in reviewing the administrative record." *Peer Bearing Co.-Changshan v. United States*, 766 F.3d 1396, 1399 (Fed. Cir. 2014). "Thus, without affording any deference to the Court of International Trade, this court reassesses the administrative record for 'substantial evidence' and for consistency 'with law.'" *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1036 (Fed. Cir. 2003); 19 U.S.C. § 1516a(b)(1)(B)(i).

In reviewing Commerce's scope determinations, the Court grants "'significant deference to Commerce's interpretation of a scope order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This deference is appropriate because scope rulings are "'highly fact-intensive and case-specific,'" *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (quoting *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)), and "the meaning and scope of antidumping orders are issues 'particularly within the expertise' and 'special competence' of Commerce." *King Supply*, 674 F.3d at 1348 (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998)). "{P}arties challenging Commerce's scope determinations under substantial evidence review confront a high barrier to reversal." *United Steel and Fasteners, Inc. v. United States*, 947 F.3d 794, 798 (Fed. Cir. 2020) (citing *King Supply*, 674 F.3d at 1348) (additional citation omitted).

### B. Commerce's Original Scope Ruling Should Be Upheld for Being Supported by Substantial Evidence and Otherwise in Accordance with Law

In its original scope ruling, Commerce correctly found that dual-stenciled pipe is covered by the scope of the Order. The scope covers circular welded carbon steel pipes and tubes from Thailand with an outside diameter of 0.375 inches or

more, but not exceeding 16 inches. *See* Final Scope Ruling, Appx40763. The dual-stenciled pipe manufactured by Saha Thai in Thailand is circular in shape, welded, made of carbon steel, and has an outside diameter of 0.375 inches or more, but does not exceed 16 inches. *Id.,* Appx40764. Furthermore, there is no exclusionary language in the Order for standard pipe that meets the description of the subject merchandise but that is also dual-stenciled to standard pipe and line pipe specifications. Thus, the plain language of the Order covers dual-stenciled pipe.

### C. The CIT Impermissibly Relied on (k)(1) Factors to Reject Commerce's Scope Determination

1. <u>The CIT should not have considered so-called (k)(1) factors</u>

The first step in a scope inquiry is to consider the language of the antidumping order itself. *See Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382-83 (Fed. Cir. 2005). If the language governing the scope of the order is unambiguous, the "plain language of the order governs." *OMG Inc. v. United States*, 972 F.3d 1358, 1364 (Fed. Cir. 2020).

Saha Thai's dual-stenciled pipe is clearly covered by the plain language of Order. The pipe is made of welded steel, circular, has an outside diameter between 0.375 and 16 inches, and is certified as "standard pipe." *See Saha Thai I*, 547 F. Supp. 3d at 1284, Appx00034. The plain language of the scope contains no exclusions for pipe that may also be certified as line pipe. In the absence of any

such exclusion, Saha Thai's pipe is covered by the unambiguous scope and there was no need for any further analysis or interpretation.

The CIT nonetheless found that the written scope of the Order was ambiguous with respect to whether pipe stenciled to two industrial standards was covered, based on its finding that the order did not define standard pipe or explicitly reference dual-stenciled pipe. *Saha Thai I*, 547 F. Supp. 3d at 1294, Appx00039. On this basis, the CIT proceeded to examine the scope's language within the context of the guidelines contained in 19 C.F.R. § 351.225(k)(1) (2020). *Id*. Extrinsic aids such as the "(k)(1)" sources may aid Commerce's interpretation of its own order, but such aids "cannot substitute for the language in the order itself." *Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002). In this case, the plain language of the Order, which contains no exclusions for dual-stenciled pipe, covers Saha Thai's pipe.

The CIT's reliance on extrinsic (k)(1) factors to find that the pipe was excluded was thus in error because the CIT interpreted the scope language to create an exclusion for dual-stenciled pipe that did not exist. *See Duferco*, 296 F.3d at 1095 ("However, Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." (internal quotations omitted)). On this basis alone, this Court should reverse the CIT's judgment. Regardless, even if this Court finds that reliance on

the (k)(1) factors was permissible, the CIT's analysis of those factors was fundamentally flawed and also warrants reversal, as explained in more detail below.

2. Saha Thai's dual-stenciled pipe is simultaneously standard pipe and line pipe

As discussed in Section C.1., above, Saha Thai's dual-stenciled pipe meets all of the criteria set forth in the scope of the Order in terms of material, manufacturing method, size, and conformance with the industry specifications for "standard pipe." The CIT, however, mistakenly found that standard pipe loses its identity as standard pipe if it is also stenciled as compliant with an industrial standard for line pipe. *See, e.g.*, *Saha Thai I*, 547 F. Supp. 3d at 1299, Appx00044, *Saha Thai II* at 25, Appx00027.

Notwithstanding the CIT's insistence that dual-stenciled pipe cannot be standard pipe, the fact remains that Saha Thai certified that its exports complied with an industrial specification for standard pipe, and a consumer could use that pipe in any standard pipe application without issue. That a purchaser could also use the same pipe in a line pipe application does not negate its utility or identity as standard pipe.

In its final scope ruling, Commerce referenced a Venn diagram originally prepared by Saha Thai that it indicated was helpful in conceptualizing the overlap

between the industrial standards for standard and line pipe. That diagram is re-created below:




*See* Final Scope Ruling, Appx40752.

The scope of the Order is defined to cover all standard pipe meeting certain physical characteristics. The scope contains no exclusions, unlike later orders on CWP that exclude dual-stenciled pipe. Consequently, by the terms of the Order, everything within the blue circle on the right should be subject merchandise, including the area of intersection between the two circles. Yet, under the CIT's interpretation of the scope, the area where the two circles intersect can <u>only</u> be part of the yellow circle on the left. In the absence of an exclusion for dual-stenciled pipe, which the Order at issue here does not contain, this interpretation defies logic and is contrary to the plain language of the scope.

3. <u>The CIT's finding that dual-stenciled pipe is and can only be "line pipe" is not based on substantial evidence</u>

The CIT's conclusion that dual-stenciled pipe is irrefutably line pipe—and line pipe only—appears to derive from: (a) Petitioners' withdrawal of the petition with respect to line pipe from Thailand, (b) CBP rules that require dual-stenciled pipe to enter the United States under the more specific tariff classifications for line pipe, rather than the less specific classifications for standard pipe, (c) President Clinton's decision to include dual-stenciled pipe in a safeguard action on line pipe, and (d) ITC references to items (b) and (c), as well generalized and inaccurate statements by the ITC that dual-stenciled pipe is excluded from all orders on CWP made in the course of two reviews involving multiple products from multiple countries.

a. <u>The withdrawal of the petition with respect to line pipe from Thailand did not create an exclusion for dual-stenciled pipe</u>

In *Saha Thai II*, the CIT observed that petitioners withdrew the petition as it related to line pipe from Thailand, and that "their withdrawal letter specifically covered the categories under which all dual-stenciled line pipe would have been imported." *Saha Thai II*, at 9, Appx00011. The CIT also observed that Commerce's Final Scope Determination "included a product that was explicitly withdrawn from consideration in 1985." *Id*. at 10, Appx00012.

Contrary to the CIT's reasoning, declining to pursue a case on line pipe did not create an exclusion for dual-stenciled pipe that otherwise meets the express terms of the scope of the Order. As an initial matter, Commerce, not petitioners, defines the scope of an antidumping duty order. Indeed, Commerce had the authority to depart from the scope proposed in the petition, so the petition and the letter indicating partial withdrawal by themselves do not show Commerce's understanding of the scope of its own antidumping duty order. *See Ad Hoc Shrimp Trade Action Committee v. United States*, 637 F.Supp.2d 1166, 1174 (Ct. Int'l Trade 2009); *NTN Bearing Corp. of Am. v. United States*, 747 F. Supp. 726, 731 (Ct. Int'l Trade 1990); *Diversified Prod. Corp. v. United States*, 572 F. Supp. 883, 887 (Ct. Int'l Trade 1983). Thus, even though Commerce may consider the intent of the petitioners from the original proceeding, the best evidence of Commerce's intent as to the agency's own antidumping order is the language of the order itself. *See Fedmet Res. Corp.*, 755 F.3d at 918 (noting that language of order is "paramount").

In addition, the withdrawal did not add any language excluding line pipe. The scope continued to cover standard pipe with certain physical characteristics, just as it had before the withdrawal. If a pipe meets the remaining scope definition, which covers standard pipe in certain sizes, it is subject to the order.

The removal of the tariff classifications for line pipe from the scope definition is also of no moment, as it has always been the narrative description of the merchandise that defines a scope, not the tariff classifications. *See, e.g., Novosteel SA v. U.S., Bethlehem Steel Cor.*, 284 F.3d 1261, 1264 (Fed. Cir. 2002) ("As a matter of law, a petition need not list the entire universe of products or the numbers assigned to them under the HTSUS in order to cover those products"); *Smith Corona Corp. v. United States*, 915 F.2d 683, 687 (Fed. Cir. 1990) (reasoning that reference to TSUS classification number is not dispositive). Moreover, as the scope currently states, the enumerated tariff classifications are not dispositive. *See Saha Thai I* at 1284, Appx00034.

Thus, the CIT was incorrect when it substituted its judgment for that of Commerce to conclude that the petitioners' withdrawal of the petition with regard to certain tariff categories created an exclusion for dual-stenciled pipe that otherwise meets the unaltered physical characteristics of the scope.

b. CBP rules do not alter Commerce's published scope definitions

The CIT makes much of the fact that dual-stenciled pipe would enter the United States under a tariff classicization for line pipe, as opposed to standard pipe, contributing to its conclusion that dual-stenciled pipe must be considered line pipe only and not standard pipe. *See Saha Thai II* at 22, 24 Appx00024, Appx00026; *Saha Thai I* at 1286, Appx00035. It is worth noting here that the ITC references on

which the CIT relies make clear that the reason dual-stenciled pipe enters as line pipe is for "U.S. customs purposes." *See Saha Thai II* at 22, 24 Appx00024, Appx00026; *Saha Thai I*, 547 F. Supp. 3d at 1286, Appx00035. The most that these statements indicate is that because there is no specific tariff code for dual-stenciled pipe, CBP prefers dual-stenciled pipe to be classified as line pipe for CBP's purposes. It says nothing about the scope of the Order or how Commerce should interpret it. As Commerce explained in its Final Scope Determination, CBP's preference for the

> more specific TSUSA line pipe categories, rather than the less-specific TSUSA standard pipe categories, has no bearing on the fact that the dual-stenciled pipe meets the definition of the TSUSA standard pipe categories, and that product is certified to be used as standard pipe.

Final Scope Order at 7, Appx40685. How CBP instructs importers to classify dual-stenciled pipe has no effect on whether that pipe meets the Order's definition of the scope. The CIT's reliance on CBP classification preferences was thus in error.

c. <u>Safeguard proceedings do not alter Commerce's published scope definitions</u>

The CIT also cites as support for its conclusion discussion in an ITC report indicating that "when President Clinton imposed temporary safeguard duties on line pipe, dual-stenciled line pipe was included in the safeguard duties, but standard pipe was not." *Saha Thai II* at 23, Appx00025. Again, however, what a former President decided in a safeguard proceeding says nothing about the scope

of the Order at issue here. The inclusion of dual-stenciled pipe in a line pipe safeguard does not in any way affect the scope of the Order of CWP from Thailand.

If anything, it indicates that in trade proceedings involving products where dual-stenciling is possible, foreign interests will have an incentive to start shipping a dual-stenciled product if the dual-stenciled product is not included within the scope of the relief. Thus, to ensure the safeguard measures on line pipe had their intended remedial effect, it was logical for the President to direct explicitly that dual-stenciled pipe be subject to the safeguard relief. Otherwise, importers could evade the safeguard by dual-stenciling otherwise subject pipe.

In short, the CIT's reliance on the President's safeguard determination was misplaced. The President's safeguard determination was needed to avoid circumvention of the remedy on line pipe imports in that case. That fact does not change the plain language of the scope here, which contains no exclusion for dual-stenciled pipe.

d. Characterizations of scope definitions in ITC reports do not alter Commerce's published scope definitions

The CIT also cites as support for its position a statement in the ITC's third and fourth sunset reviews that "[d]ual-stenciled pipe, which enters as line pipe under a different subheading of the Harmonized Tariff Schedule of the United States ("HTS") for U.S. customs purposes, is not within the scope of the orders."

*Saha Thai I*, 547 F. Supp. 3d at 1297-98*,* Appx00026. In doing so, the CIT dismissed the possibility raised by both Commerce and Wheatland that the ITC either (1) made a mistake in its characterization of the multiple individual scope definitions at issue, many of which do exclude dual-stenciled pipe, or (2) intended the statement as a generalization based on the fact that most, but not all, of the orders it was reviewing contained an explicit exclusion for dual-stenciled pipe. *Id*. at 25, Appx00027.

The CIT's reliance on the ITC's mistaken characterizations of the scope at issue here is unjustified. For example, Commerce – the agency responsible under the statute for defining and interpreting scope – noted in its Final Scope Ruling that "{u}nlike the AD orders covering similar merchandise (*e.g.*, from Mexico or Venezuela), the CWP from Thailand Order does not explicitly exclude dual-stenciled standard and line pipe." Final Scope Ruling at 14, Appx40775. A simple review of the scope of the Thai Order confirms that it does not include any exclusion for dual-stenciled pipe.

The ITC's mistaken, or at least imprecise, characterization of multiple orders where most have exclusions for dual-stenciled pipe but some do not cannot create an exclusion that is not already contained in a particular scope definition. It is well-settled that Commerce is the agency that defines the scope of an antidumping duty order. *See, e.g., Allegheny Ludlum Corp. v. United States*, 116 F. Supp. 2d 1276,

n.6 (Ct. Int'l Trade 2000). The CIT was thus in error when it relied on these ITC statements to re-write the plain language of the Thailand Order.

The CIT's Judgment also overlooks a reference to the first sunset review in its first opinion, where the ITC stated that "the orders on CWP from Thailand and Turkey (CVD) have no express exclusions for products excluded from the scopes in all later cases, including line pipe … ." *Saha Thai I*, 547 F. Supp. 3d at 1285, Appx00034. If Commerce had granted an exclusion for dual-stenciled pipe sometime between the ITC's first and third sunset reviews, either this proceeding would not be happening, or the exclusion would appear in the administrative record. The record does not, however, contain any such exclusion because it does not exist.

While Wheatland's position is that the language of the scope itself is dispositive in this case and there was no need to rely on extraneous (k)(1) factors, as long as the CIT was relying on (k)(1) factors it should have reviewed all of the evidence before it. Yet the CIT failed to give appropriate weight to other information that detracted from its findings. For example, the CIT dismissed as "not (k)(1) materials" the "isolated examples" provided by Wheatland and the United States in response to the CIT's request for instances where dual-stenciled pipe was referred to as standard pipe. *Id*. at 1298, Appx00042 (discussing orders referencing "standard pipe that is dual or triple certified/stenciled").

Despite dismissing the scope definitions from other CWP cases as "not (k)(1) materials" and "isolated examples," they are highly probative of whether a dual- (or triple-) stenciled pipe product immutably becomes line pipe and can never be referred to as standard pipe.[4] These examples also help to explain how the ITC may have made inadvertent misstatements in the third and fourth sunset reviews regarding the scopes of the multiple and inconsistent orders it was reviewing. These scope definitions for the orders on Brazil, Mexico, and Korea provide:

> Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in the orders.

*See Saha Thai I*, 547 F. Supp. 3d at 1288, Appx00037. Similarly, the scope definition for the order on Taiwan provides:

> Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind or used for oil and gas pipelines is also not included in the scope of the order.

*Id*.

---

[4] In fact, Commerce has explained that it considers the (k)(1) sources to include prior determinations under other orders with similar scope language and that cover the same or similar merchandise from other countries. *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't Commerce Sept. 20, 2021).

In light of these explicit exclusions, it is remarkable that the CIT used the example of Korean exporters shipping dual-stenciled line pipe to the United States without the imposition of antidumping duties as support for its conclusion that dual-stenciled pipe can only be considered line pipe. *See Saha Thai II* at 23, Appx00025. The scope of the order on CWP from Korea not only refers to dual-stenciled pipe as standard pipe, it contains an exclusion for dual-stenciled pipe. Clearly, the reason Korean exporters could export dual-stenciled pipe without the imposition of antidumping duties was the explicit exclusion in the Korean order.

In contrast to the scope definitions for CWP from the four countries identified above, there is no provision that dual-stenciled pipe is “not included in the scope of the order” in the scope of the Order on CWP from Thailand. This, combined with other evidence including Commerce’s statements that the various orders on CWP were inconsistent in excluding dual-stenciled product (*see* Final Remand Determination at 4, Appx00049), demonstrate that dual-stenciled pipe was treated differently in different proceedings based on the language of the particular order. There is thus no uniform rule that dual-stenciled pipe is always treated as line pipe and never as standard pipe. As long as the CIT was considering (k)(1) factors, its refusal to also consider this evidence was in error.

### D. The ITC Made A Valid Injury Determination Based On The Scope Of The Investigation

The CIT also questioned whether the ITC's injury determination would cover dual-stenciled pipe. *Saha Thai I*, 547 F. Supp. 3d at 1296, Appx00042. In doing so, the CIT again conflates dual-stenciled pipe and line pipe and adds that, because Thailand did not produce any line pipe at the time of the investigation, the ITC could not have examined imports of dual-stenciled pipe. *Id.*

As discussed above, it is not the case that dual-stenciled pipe can only be considered line pipe. This Court has also held that the ITC need not reference a specific product in its injury analysis to have that product covered by the scope of an order, so long as that product is covered by the physical description of the merchandise in the scope of the order. *See Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1351, 1355-56 (Fed. Cir. 2015). Any dual-stenciled pipe imported from Thailand in the relevant sizes would be produced in accordance with the industry specifications for standard pipe and would therefore possess the physical characteristics identified in the scope, and thus would be covered by the physical description of the merchandise in the scope of the order.

The CIT also cites the ITC's decision to consider standard pipe and line pipe as separate like products as another reason that dual-stenciled pipe cannot be subject to the Order. *Saha Thai I*, 547 F. Supp. 3d at 1296, Appx00042. Again,

however, the CIT's concern stems from its mistaken conclusion that dual-stenciled pipe can only be line pipe, and ignores that a dual-stenciled pipe entering the United States would need to also be certified as standard pipe and match the physical characteristics of subject pipe set forth in the scope – thus matching the pipes that were the subject of the ITC's original inquiry. *See Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (Ct. Int'l Trade 2014), aff'd, 776 F.3d 1351, 1355-56 (Fed. Cir. 2015).

It is also well settled that Commerce's definition of the scope and the ITC's determination of the domestic like product are distinct inquiries. *See Torrington Co. v. United States*, 747 F. Supp. 744 (Ct. Int'l Trade 1990) ("It is settled law that the Commission's like product determination is separate and distinct from the ITA's determination of the class or kind of merchandise."); *see also Allegheny Ludlum Corp. v. United States*, 116 F. Supp.2d 1276, 1297 (Ct. Int'l Trade 2000) ("Although the ITC must accept Commerce's determination as to the scope of the imported merchandise found to be subsidized or sold at less than fair value, the Commission determines what domestic product or products is like the imported articles Commerce identified."); *see also Hosiden Corp. v. United States*, 85 F.3d 1561, 1567 (Fed. Cir. 1996) ("Both the Court of International Trade and this court have long recognized that for injury determinations the 'class or kind' and 'like product' determinations required by the statute need not be consistent.").

For all of these reasons, this Court should reject the CIT's conclusion that dual-stenciled pipe were not the subject of an appropriate injury inquiry and therefore cannot be subject to the Order.

## IX. CONCLUSION

For the foregoing reasons, Defendant-Appellant requests that this Court reverse the judgment of the CIT that standard pipe also stenciled as line pipe is not covered by the scope of the Order on Circular Welded Pipe from Thailand.

Respectfully submitted:

*/s/* Roger B. Schagrin, Esq.
Roger B. Schagrin, Esq.
Christopher T. Cloutier, Esq.
Luke A. Meisner, Esq.
**SCHAGRIN ASSOCIATES**
900 7th Street NW #500
Washington, DC 20001
(202) 223-1700

*Counsel to Wheatland Tube Company*

Dated: November 21, 2022

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-2181

**Short Case Caption:** Saha Thai Steel Pipe Public Company Limited v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 9,068 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 11/21/2022

Signature: /s/ Roger B. Schagrin

Name: Roger B. Schagrin

Save for Filing