2022-2181

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant,*

WHEATLAND TUBE COMPANY,

*Defendant-Appellant.*

Appeal from The United States Court of International Trade in
Case No. 1:20-cv-00133-SAV, Judge Stephen A. Vaden

## REPLY BRIEF OF
## DEFENDANT-APPELLANT WHEATLAND TUBE COMPANY

Roger B. Schagrin
Christopher T. Cloutier
Luke A. Meisner
**SCHAGRIN ASSOCIATES**
900 7th Street NW #500
Washington, DC 20001
(202) 223-1700

*Counsel to Wheatland Tube Company*

Dated: February 3, 2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-2181 |
| **Short Case Caption** | Saha Thai Steel Pipe Public Company Limited v. US |
| **Filing Party/Entity** | Wheatland Tube Company |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 2/3/23

Signature:  /s/ Roger B. Schagrin

Name:  Roger B. Schagrin

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Wheatland Tube Company | | Zekelman Industries, not publicly traded |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Paul Jameson, formerly of Schagrin Associates | | |
| John Bohn, formerly of Schagrin Associates | | |
| Geert De Prest, formerly of Schagrin Associates | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Blue Pipe Steel Center Co., Ltd. v. US (CIT No. 21-81). | Saha Thai Steel Pipe Public Company Limited. v. US (CIT 21-49) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. SUMMARY OF ARGUMENT .....................................................................1

III. ARGUMENT.................................................................................................4

    A. The Remand Redetermination Is Not Supported By
       Substantial Evidence ...........................................................................4

       1. The scope published by Commerce unambiguously
          covers Saha Thai's dual-stenciled pipe.............................................5

          a. Saha Thai's dual-stenciled pipe meets all of the
             physical characteristics specified in the scope...........................6

          b. The imports at issue are standard pipe.......................................7

          c. The Order contains no exclusions.............................................12

       2. No ITC proceeding has changed the definition of
          scope published by Commerce ....................................................14

          a. The original investigation ........................................................14

          b. Subsequent sunset reviews.......................................................16

          c. Unrelated ITC proceedings ......................................................19

    B. This Court's Decision In *Wheatland Tube* Does Not
       Support Commerce's Remand Redetermination................................20

IV. CONCLUSION............................................................................................22

# TABLE OF AUTHORITIES

## Cases

*King Supply LLC v. United States,*
    674 F.3d 1343 (Fed. Cir. 2012) …………………………..……………..20

*Saha Thai Steel Pipe Public Company, Ltd. v. United States*,
    2022 WL 3681263 (Ct. Int'l Trade Aug. 25, 2022) ...……..…..…5, 12, 18-19

*Saha Thai Steel Pipe Public Company, Ltd. v. United States*,
    547 F.Supp.3d 1278 (Ct Int'l Trade 2021) ……..…………..…6-8, 10, 12, 18

*Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*,
    961 F. Supp. 2d 1291 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1365
    (Fed. Cir. 1998) ………..………………………………………..……...15, 21

*Smith Corona Corp. v. United States*,
    915 F.2d 683 (Fed. Cir. 1990) …………...…………………….…..…13

*Tak Fat Trading Co. v. United States*,
    396 F.3d 1378 (Fed. Cir. 2005) …………...…………………….…..…5

*Novosteel SA v. U.S., Bethlehem Steel Cor*.,
    284 F.3d 1261 (Fed. Cir. 2002) …………....…………………….…..…13

*OMG Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) …………...…………………….…..…5

*Vandewater Int'l Inc. v. United States*,
    589 F. Supp. 3d 1324 (Ct. Int'l Trade 2022) ...……………………….…..…8

*Wheatland Tube Co. v United States*,
    973 F. Supp. 149 (Ct. Int'l Trade 1997), *aff'd,* 161 F.3d 1351
    (Fed. Cir. 2015) ………..………………………………………..…..… 4, 20-21

**Administrative Materials**

*Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico,
    Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-
    132, 252, 271, 273, 532-534, and 536 (Fourth Review),
    USITC Pub. 4754 (Jan. 2018) ...……………………………………..…15-18

*Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico,
    Taiwan, Thailand, and Turkey*, Inv. Nos. 701-TA-253 and 731-TA-132, 252,
    271, 273, 532-534 and 536 (Third Review),
    USITC Pub. 4333 (June 2012) …………………………………..…..…9, 16-17

*Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico,
    Singapore, Taiwan, Thailand, Turkey, and Venezuela*, Inv. Nos. 701-TA-
    253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536,
    and 537 (Review), USITC Pub. 3316 (July 2000) …....……………….…..…18

*Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand (Final)*,
    Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810
    (Dep't Commerce Feb. 1986) ……………………………………….…..…15

*Regulations To Improve Administration and Enforcement of Antidumping and
    Countervailing Duty Laws*, 86 Fed. Reg. 52,300
    (Dep't Commerce Sept. 20, 2021) ………………………………..…..…8

**Regulations**

19 C.F.R. § 351.225 ……………………..………………………..……………..…...8

## I.    <u>INTRODUCTION</u>

On behalf of Defendant-Appellant Wheatland Tube Company ("Defendant-Appellant" or "Wheatland"), we respectfully submit this reply brief in accordance with Federal Rule of Appellate Procedure 28, Federal Circuit Rule 28.

## II.    <u>SUMMARY OF ARGUMENT</u>

The Court of International Trade ("CIT") erred in reversing the original Final Scope Determination and then subsequently finding that the Remand Redetermination was supported by substantial evidence and otherwise in accordance with law. The U.S. Department of Commerce ("Commerce") itself outlined the shortcomings in the analysis applied by the CIT in its Remand Redetermination, which it filed under protest. As Commerce observed, the CIT's errors include relying on information and arguments not presented to the agency below, misinterpreting the findings of the United States International Trade Commission ("ITC") in its original injury investigation, and mischaracterizing statements in other ITC proceedings.

Saha Thai Steel Pipe Company Limited ("Saha Thai") offers a variety of arguments in support of the CIT's decisions, but these arguments are unpersuasive. First, Saha Thai ignores the plain language of the scope of the Order, which covers circular welded pipe ("CWP") in a certain size range known as "standard pipe." Unlike many orders on CWP from other countries, the Order contains no exclusion

for CWP that is dual-stenciled, that is, simultaneously meets the requirements of both "standard pipe" and "line pipe."

Notwithstanding the absence of an exclusion in the Order, Saha Thai argues that because CBP requires dual-stenciled pipe to enter the United States under the tariff classification for line pipe, the absence of the tariff classifications for line pipe in the scope definition results in an exclusion for pipe that qualifies as both standard and line pipe. Yet, the express terms of the Order state that "{a}lthough the HTSUS subheadings are provided for convenience and purposes of U.S. Customs and Border Protection (CBP), the written description of the merchandise subject to the order is dispositive."

Saha Thai also asserts that the ITC's injury determination was based only on imports of standard pipe, and not "line pipe," so that duties may not be assessed on dual-stenciled pipe qualifying as both standard and line pipe. This argument ignores, however, that Saha Thai's dual-stenciled pipe is certified for use in standard pipe applications, has all of the physical attributes of standard pipe, and is indistinguishable from standard pipe. Courts have previously found that the ITC need not reference a specific product in its injury analysis to have that product covered by the scope of an order, so long as that product is covered by the physical description of the merchandise in the scope of the order. Saha Thai's dual-stenciled

pipe is clearly covered by the physical description contained in the scope of the Order.

Saha Thai also takes statements in certain ITC reports out of context to invent a construct in which dual-stenciled pipe can somehow only be referred to as line pipe, notwithstanding that Saha Thai certifies the product as both standard pipe and line pipe, and that the product can be, and is used as, standard pipe. The statements at issue consist of characterizations of the scope of multiple orders on CWP in sunset reviews, in which the ITC takes note of the CBP rule requiring dual-stenciled pipe to be entered under the more specific classification for line pipe and states that dual-stenciled pipe is outside the scope of the orders. Yet, these two statements were either intended as generalizations, because the majority of orders at issue do expressly exclude dual-stenciled pipe, or were mistaken. The Order at issue here, for example, contains no exclusion for dual-stenciled pipe. Moreover, the same ITC publications observe within a page of these statements, correctly, that the myriad orders at issue are inconsistent with regard to product exclusions.

Saha Thai also echoes the CIT's reasoning that President Clinton's decision to include dual-stenciled pipe in the safeguard remedy for line pipe proves conclusively that dual-stenciled pipe is and can only be line pipe, and may not be referred to as standard pipe. What the President decided to include in the safeguard remedy does not, however, change the definition of scope for the Order on CWP

3

from Thailand. Moreover, the idea that the President's decision to include dual-stenciled pipe in safeguard relief somehow requires others to refer to dual-stenciled pipe as line pipe and prohibits reference to this product as standard pipe has no legal basis or grounding in the record.

Finally, Saha Thai argues that this Court's decision in *Wheatland Tube* means that the application of antidumping duties to dual-stenciled pipe here would improperly expand the scope of the Order. But this argument ignores that *Wheatland Tube* addressed a CWP order that expressly excluded dual-stenciled pipe, unlike the Order at issue here.

## III.  <u>ARGUMENT</u>

### A. The Remand Redetermination Is Not Supported By Substantial Evidence

As explained in Defendant-Appellant's opening brief, the CIT erred in finding that the Remand Redetermination was supported by substantial evidence and otherwise in accordance with law. Commerce itself outlined various shortcomings in the analysis applied by the CIT in its Remand Redetermination, which it filed under protest. Appx00046-00073.

Among other things, Commerce highlighted in the Remand Redetermination that the CIT had:

- Relied on evidence not properly on the administrative record, in violation of 19 U.S.C. § 1516a(b)(1)(B)(1);

- Misunderstood the findings of the ITC in its original injury investigation; and

- Misunderstood statements made by the ITC in the third and fourth sunset reviews of circular welded pipe ("CWP") from several countries – which had varying scope definitions – and also overlooked statements detracting from the CIT's conclusions in those same reports.

In its Response Brief, Saha Thai offers a variety of arguments in support of the CIT's decisions. For the reasons discussed below, however, Commerce's Remand Redetermination and the CIT's opinion and judgment in *Saha Thai II* are wrongly decided and should be set aside in favor of Commerce's Final Scope Determination. Appx40762-40780.

## 1. The scope published by Commerce unambiguously covers Saha Thai's dual-stenciled pipe

The first step in a scope inquiry is to consider the language of the antidumping order itself. *See Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382-83 (Fed. Cir. 2005). If the language governing the scope of the order is unambiguous, the "plain language of the order governs." *OMG Inc. v. United States*, 972 F.3d 1358, 1364 (Fed. Cir. 2020). As set forth in greater detail in Wheatland Tube's opening brief, Saha Thai's dual-stenciled pipe is covered by the plain language of Order, as it meets the physical criteria, is certified as complying with an industrial specification for "standard pipe," and is not excluded from the Order as the Order contains no exclusion for standard pipe that meets a second

industrial specification (unlike the orders on CWP from a variety of other countries). None of the arguments to the contrary raised in Saha Thai's Response Brief have merit and, as discussed below, they should be rejected.

> ### a.   Saha Thai's dual-stenciled pipe meets all of the physical characteristics specified in the scope

The Order on CWP from Thailand covers "circular welded carbon steel pipes and tubes with an outside diameter of 0.375 inch or more but not exceeding 16 inches, of any wall thickness." *See Saha Thai I,* 547 F. Supp. 3d at 1284, Appx00034. There is no dispute that the dual-stenciled pipe exported by Saha Thai to the United States falls within these parameters. *See, e.g.,* Saha Thai Br. at 10, 17. Moreover, evidence placed on the administrative record by Saha Thai confirms that standard pipe and line pipe in smaller size ranges are indistinguishable. *See* Saha Thai Letter, "Saha Thai's Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated August 26, 2019 at Attachment 7, Appx40283.[1] There is no dispute that Saha Thai certifies the pipe at

---

[1] This document is the pre-hearing brief of the domestic industry in the first sunset review of the CWP orders on Brazil, India, South Korea, Mexico, Taiwan, Thailand, Turkey, and Venezuela. On the same page that Saha Thai cites for its assertion that Wheatland Tube agrees that dual-stenciled pipe can only be line pipe (discussed in more detail in Section III.A.1.b, *infra*), the domestic industry cites sworn testimony in which counsel for Korean interests confirms that welded line and standard pipe bearing multiple stencils are "physically the same product."

issue here as meeting an industrial specification for standard pipe. *See, e.g.*, Saha

Thai Br. at 11, 15, 17. This pipe can thus be sold, and used, as standard pipe.

### b.     The imports at issue are standard pipe

The original scope definition published by Commerce identified subject pipe

as that "known as 'standard pipe,'" which was subsequently revised to read

"commonly referred to in the industry as 'standard pipe.'" *See Saha Thai I*, 547 F.

Supp. 3d at 1284, Appx00034. Saha Thai asserts that these references to standard

pipe are effectively exclusions for dual-stenciled pipe because the application of a

second stencil transmogrifies the product into line pipe that can never be referred

to as standard pipe – notwithstanding that it is certified as, and may be used as,

standard pipe. Saha Thai Br. at 20 ("The limiting language in the order 'known as'

or 'commonly referred to' as standard pipe … necessarily exclude{es} any pipe

that is not known as or referred to as standard pipe … such as line pipe and dual

stenciled pipe").

For Saha Thai's argument to prevail, it must be true that dual-stenciled pipe

could never be referred to as standard pipe, and Saha Thai in fact proclaims that

"for purposes of trade cases dual-stenciled pipe is line pipe." Saha Thai Br. at 45.

Commerce ably dispatched Saha Thai's argument that pipe complying with

industrial specifications for both standard and line pipe can only be referred to as

line pipe in its original scope determination:

> Simply because a certain product is certified as line pipe does not result in it being not certified as standard pipe. Stated differently, if a certain product is certified as standard pipe, then it is standard pipe regardless of whether it is also certified as line pipe.

Final Scope Determination, Appx40775 (internal citations omitted).

Saha Thai's construct is also incompatible with the scope definitions for CWP from Brazil, Mexico, Korea, and Taiwan, all of which contain exclusions for "standard pipe that is dual or triple certified/stenciled." *See Saha Thai I*, 547 F. Supp. 3d at 1288, Appx00037 (emphasis added). The CIT rejected these examples of references to standard pipe with multiple stencils as "not (k)(1) materials" because they did not relate to the Thai Order specifically. *Id*. at 1298, Appx00043. However, as Commerce has recognized, while its regulation does not require the agency to review orders involving other countries, Commerce may do so when such information is placed on the administrative record – as it was in underlying proceeding in this case. *Vandewater Int'l Inc. v. United States*, 589 F. Supp. 3d 1324, 1330 (Ct. Int'l Trade 2022). Indeed, this longstanding practice has now been codified in Commerce's updated scope regulations. *See* 19 C.F.R. § 351.225(k)(1)(i)(C) (2022); *see also Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't Commerce Sept. 20, 2021) (final rule). Moreover, these published antidumping orders involving CWP from other countries demonstrate

unequivocally that dual-stenciled pipe can be referred to as standard pipe, even

"for purposes of trade cases."

Saha Thai also claims Wheatland Tube has in the past agreed that dual-

stenciled pipe is and can only be line pipe. In particular, Saha Thai states that in a

prior ITC proceeding

> Wheatland Tube asserted in a certified document that line pipe and dual-stenciled pipe were not covered by the scope of the orders subject to that review.

Saha Thai Br. at 39 (emphasis in original).[2] This claim is not true.

As Commerce correctly observed when rejecting essentially the same

argument below, the sentence which Saha Thai claims proves its point is

> focused on how Korean producers of line pipe would shift from production of line pipe to standard pipe if the order on standard pipe from Korea were revoked. This is relevant because the order on CWP from Korea has a specific exclusion for line pipe.

See Final Scope Determination at 16-17, Appx40777-40778.[3] In fact, a majority of

the countries subject to the review at issue – Brazil, Korea, Mexico and Taiwan –

---

[2] The ITC proceeding at issue was the third sunset review of orders on CWP from seven countries, each of which has its own scope definition. See Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534 and 536 (Third Review), USITC Pub. 4333 (June 2012).

[3] Commerce also references quotations from respondent interests in the submission cited by Saha Thai that between 70 and 80 percent of the Korean pipe imported under the exclusion for dual-stenciled pipe was sold for standard pipe applications. Final Scope Determination at 17 n.103, Appx40778. The fact that the

all had scopes with explicit exclusions for dual-stenciled pipe. *Saha Thai I*, 547 F.

Supp. 3d at 1288, Appx00037. Thus, the single sentence of the 65-page brief that

Saha Thai cites is in fact a recognition of the varying scopes at issue. It is not an

assertion by Wheatland that dual-stenciled pipe is and can only be line pipe.

Moreover, considering that the statement is focused on Korea – one of those orders

with an exclusion for dual-stenciled standard pipe – Saha Thai's insertion of a

parenthetical reference to Thailand, one of the orders without an exclusion, and

another parenthetical declaring dual-stenciled pipe as "non-subject" is particularly

inappropriate:

> It is likely that Korea, and other countries {e.g. Thailand} if no longer
> subject to the restraints imposed by the Standard Pipe antidumping
> order, will switch their production from {non-subject} line pipe
> (whether dual stenciled or not) to standard pipe.

Saha Thai Br. at 39. Appx40283-40284 (emphasis supplied). The fact that

Saha Thai had to insert the country "Thailand" to prove its point shows that

its point is wholly invalid.

   The fallacy in Saha Thai's argument is also readily apparent from the Venn

diagram Saha Thai submitted to Commerce but now attempts to disown. *See* Saha

Thai Br. at 19. According to Saha Thai's logic, the area of overlap between the two

---

preponderance of purportedly dual-stenciled "line pipe" from Korea was sold for
use as standard pipe further diminishes Saha Thai's claims that dual-stenciled pipe
is and can only be line pipe.

circles below is part of the circle for line pipe, but not part for standard pipe, when in reality it is part of both circles. Considering the circles as representations of scope definitions covering line pipe and standard pipe, respectively, the only way to remove the area of overlap from the order on standard pipe would be to expressly exclude dual-stenciled pipe. In the absence of such an exclusion, any order on standard pipe covers the area of overlap.



In sum, there was substantial evidence supporting Commerce's initial analysis that a pipe certified to a particular industrial specification qualifies as that type of pipe, and can be referred to as that type of pipe, even if it is also certified as complying with some other industrial specification. The CIT erred in rejecting Commerce's reasoned and well-supported findings on this point.

### c.    The Order contains no exclusions

Saha Thai claims throughout its brief that line pipe, which it defines to include dual-stenciled pipe, is "excluded" from the scope of the Order. *See, e.g.*, Br. at 5, 10, 15, 20, 24. A cursory review of the administrative record and the Order itself reveals that this argument has no merit.

The record of the proceeding below contains evidence demonstrating what an exclusion looks like in the context of orders on CWP from other countries:

> Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is … not included in the orders.

*See Saha Thai I*, 547 F. Supp. 3d at 1288, Appx00037. There is no such exclusionary language in the Order that is the subject of this dispute. *See Saha Thai I*, 547 F. Supp. 3d at 1284, Appx00034.

Notwithstanding the absence of any actual exclusion language in the scope of the Order, Saha Thai argues that the removal from the petition of tariff classifications for line pipe is tantamount to an exclusion, as dual-stenciled line pipe would enter the United States under a tariff classification for line pipe pursuant to CBP rules. Saha Thai Br. at 11, 20, 26. *See Saha Thai II* at 22, 24 Appx00024, Appx00026; *Saha Thai I* at 1286, Appx00035. It is well established, however, that the tariff codes included in scope definitions are for the convenience of CBP and not dispositive as to whether

12

a product is covered by the scope of an order. *See, e.g., Novosteel SA v. U.S., Bethlehem Steel Cor.*, 284 F.3d 1261, 1264 (Fed. Cir. 2002) ("As a matter of law, a petition need not list the entire universe of products or the numbers assigned to them under the HTSUS in order to cover those products"); *Smith Corona Corp. v. United States*, 915 F.2d 683, 687 (Fed. Cir. 1990) (reasoning that reference to TSUS classification number is not dispositive). Thus, not including a particular tariff classification in a scope definition is not the same thing as excluding that product from the scope of the order. As Commerce explained in its Final Scope Determination:

> CBP's classification rules are not binding with respect to Commerce's analysis of whether dual-stenciled pipe is covered by the Order. Moreover, the classification rules followed by CBP, which direct importers to enter dual-stenciled products using the more specific TSUSA line pipe categories, rather than the less-specific TSUSA standard pipe categories, has no bearing on the fact that the dual-stenciled pipe meets the definition of the TSUSA standard pipe categories, and that product is certified to be used as standard pipe.

Final Scope Determination at 7, Appx40685.

In short, there are no explicit exclusions for any products that would otherwise meet the definition of subject merchandise in the scope of the Order, and the absence of the tariff classifications under which dual-stenciled pipe would enter the United States does not create an implicit exclusion. A ruling to the contrary would wreak havoc on well-established practice and jurisprudence recognizing that whatever tariff classifications are

identified in antidumping duty orders are solely for the convenience of CBP

and do not define the universe of products subject to the order.

### 2.    No ITC proceeding has changed the definition of scope published by Commerce

#### a.    The original investigation

Saha Thai argues that the ITC's injury analysis was based on scope language

that referred only to standard pipe, and thus line pipe was not part of the

underlying finding of material injury. Saha Thai Br. at 11, 35. This argument

ignores, however, that Saha Thai's dual-stenciled pipe is certified for use in

standard pipe applications, has all of the physical attributes of standard pipe, and is

indistinguishable from standard pipe. Documents placed on the administrative

record by Saha Thai confirm through sworn testimony before the ITC that "triple-

stenciled, welded line pipe and standard pipe {are} physically the same product"

and "end use" is the only practical method to distinguish between them. *See* Saha

Thai Letter, "Saha Thai's Comments on 'Line Pipe' Scope Inquiry Circular

Welded Carbon Steel Pipe and Tubes from Thailand," dated August 26, 2019 at

Attachment 7, Appx40283. This same testimony confirms that dual-stenciled pipe

can be, and in fact is, used as standard pipe. *Id*.

This Court has held that the ITC need not reference a specific product in its

injury analysis to have that product covered by the scope of an order, so long as

that product is covered by the physical description of the merchandise in the scope

of the order. *See Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1351, 1355-56 (Fed. Cir. 2015). Any dual-stenciled pipe imported from Thailand in the relevant sizes would be produced in accordance with the industry specifications for standard pipe and would therefore possess the physical characteristics identified in the scope. Consequently, the purported failure to reference dual-stenciled pipe or pipe entering under particular tariff classifications is unavailing as the ITC's injury determination was based on imports of physically identical merchandise.[4] The CIT was therefore wrong to conclude that that ITC's

---

[4] In addition to not referencing dual-stenciled pipe in its original injury investigation, the ITC also failed to reference numerous other types of standard pipe that are indisputably covered by the order. For example, in the original investigation, the ITC stated that standard pipe is generally produced to ASTM specifications A-120, A-53, or A-135. *See Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand (Final),* Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (Feb. 1986) at I-2. The ITC did not reference standard pipe that is produced to ASTM A-795, A-500, A-252, F-1083, or A-513. *Compare id.* with *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review), USITC Pub. 4754 (Jan. 2018) ("*Fourth Sunset Review*") at 6-7 (discussing various specifications of standard pipe that were not mentioned in the original investigation). Nor did the ITC mention in the original investigation any particular specifications of pipe published by the American Society of Mechanical Engineers. *Id.* But that does not mean that the Order does not cover pipe made to ASTM A-795, A-500, A-252, F-1083, A513 specifications or pipe made to ASME specifications. If pipe meeting these specifications meets the physical description of the merchandise in the Order, then the pipe is covered by the Order. The same principle applies to dual-stenciled pipe.

original injury determination would not support the imposition of remedial duties on imports of dual-stenciled pipe, which is covered by the physical description of the merchandise in the scope of the Order.

### b.    Subsequent sunset reviews

Saha Thai cites portions of certain ITC publications to support its argument that dual-stenciled pipe is excluded from the scope of the order on CWP from Thailand. For example, Saha Thai cites a statement in the third sunset review of CWP from seven countries that "dual-stenciled pipe, which for U.S. customs purposes enters as line pipe under a different tariff subheading, is not within the scope of the orders." Saha Thai Br. at 37, (citing *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534 and 536 (Third Review), USITC Pub. 4333 (June 2012) ("*Third Sunset Review*") at 7-8). Saha Thai also cites an essentially identical statement repeated in the fourth sunset review. Saha Thai Br. at 37-38 (citing *Fourth Sunset Review* at 6-7).

Commerce properly rejected these references in its Final Scope Determination, as the reviews at issue addressed orders with varying scope definitions, some of which specifically excluded dual-stenciled pipe, and some of which (including the Order on Thailand) did not:

> As Saha Thai has pointed out, in the ITC Fourth Sunset Final covering seven CWP orders, including the instant Order on standard pipe

16

products from Thailand, the ITC stated that "dual-stenciled pipe, which enters as line pipe under a different subheading of the Harmonized Tariff Schedule of the United States ("HTS") for U.S. customs purposes, is not within the scope of the orders" and that "such dual-stenciled pipe is not within the scope of the subject orders." However, in reviewing those sentences in context, it is clear that the ITC was not addressing the language of each individual order, including the scope text which differed between those orders, but instead was providing a generalized statement applicable to the majority of the orders, which contained explicit exclusions for dual-stenciled pipe.

*Id*. at 40776-40777 (internal citations omitted).

In response to Wheatland Tube's similar comments that the cited statements in the two reviews were either intended as a generalization or mistaken, Saha Thai argues that the possibility the ITC was mistaken is "preposterous." Saha Thai Br. at 42. Yet, to the extent that the statements were intended as definitive statements applicable to each of the scopes at issue, they are demonstrably inaccurate. As discussed above, while four of the countries under review had scopes specifically excluding dual-stenciled products, the others did not.

In addition, while Saha Thai cites the third sunset review to support its argument that dual-stenciled pipe is excluded from each relevant order, Saha Thai ignores a statement on the very next page acknowledging "differences in … excluded products among the circular welded pipe scope definitions." *See Third Sunset Review* at 9. Saha Thai similarly neglects a statement in the fourth sunset review that the orders at issue "vary in terms of … product exclusions." *Fourth*

*Sunset Review* at 6. Thus, it is hardly preposterous that the ITC either intended its statements regarding dual-stenciled pipe being excluded as a generalization applicable to most of the orders at issue, or was indeed mistaken, as otherwise its reports would be internally inconsistent.

The two characterizations cited by Saha Thai are also fundamentally incompatible with the ITC's first sunset review, which acknowledges that the scopes of the various orders were not the same, and in particular that

> the orders on CWP from Thailand and Turkey (CVD) have no express exclusions for products excluded from the scopes in all later cases, including line pipe.

*See Saha Thai I*, 547 F. Supp. 3d at 1285, Appx00035, *citing Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela*, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536, and 537 (Review), USITC Pub. 3316 at 11-12 n.53 (July 2000).

In short, Commerce correctly rejected Saha Thai's arguments, as generalized characterizations of multiple scope in ITC determinations do not define the scope of a particular order, especially where those characterizations are internally inconsistent. The scope definition in the Order on CWP from Thailand contains no exclusion for dual-stenciled pipe, and reliance on demonstrably inaccurate characterizations to the contrary in both *Saha Thai II* and the Remand

Redetermination means that those decisions are not supported by substantial evidence or in accordance with law.

### c.    <u>Unrelated ITC proceedings</u>

In response to Wheatland Tube's argument that nothing useful could be gleaned about the meaning of the Order on CWP from Thailand from a safeguard proceeding, which is a distinct type of trade remedy provided through a different statutory scheme, Saha Thai nonetheless argues that President Clinton's decision to include dual-stenciled pipe in safeguard relief "provides important context." Saha Thai Br. at 43. It does not.

President Clinton's decision to include dual-stenciled pipe in the safeguard relief, presumably to avoid the possibility that unscrupulous foreign interests could short circuit the intended relief by adding another stencil, says nothing about the scope of the Order on CWP from Thailand. Moreover, the CIT's contention that President Clinton's safeguard declaration incontrovertibly establishes the meaning of the term "line pipe" has no basis in law.

> If dual-stenciled line pipe were standard pipe, as Wheatland Tube claims, then it would not have been subject to President Clinton's safeguard tariffs, which solely applied to "line pipe." For Wheatland Tube to be right one must find that the ITC and President Clinton were wrong.

*See Saha Thai II* at 23, Appx00027. In declaring a safeguard measure, President Clinton was not trying to define the term "standard pipe" as employed in the scope

definition for CWP from Thailand, and the President's decision to include dual-stenciled pipe is of no import beyond the safeguard measure itself. Commerce alone is responsible for defining the scope of an antidumping duty order. *See King Supply LLC v. U.S.*, 674 F.3d 1343, 1345 (Fed. Cir. 2012) ("Commerce alone defines the scope of the AD order.")

Finally, for Wheatland Tube to be right, all that is necessary here is a careful reading of the scope of the Order, which by its own terms covers circular welded pipe in a certain size range that can be referred to as "standard pipe" – and contains no exclusions.

### B. This Court's Decision In *Wheatland Tube* Does Not Support Commerce's Remand Redetermination

Saha Thai argues that, although "the details vary somewhat," this Court's decision in *Wheatland Tube* confirms that Commerce's original scope determination "improperly expanded the scope of the AD Order at issue here." Saha Thai Br. at 48. But Commerce's Final Scope Determination did not expand anything. Appx40762-40780. There is not, and has never been, an exclusion for dual-stenciled pipe in the Order on CWP from Thailand, which is a key detail and difference between the instant proceeding and *Wheatland Tube*. As Commerce explained in its Final Scope Determination:

> Saha Thai's reliance on the exclusions in other proceedings involving standard pipe, as well as the CIT's opinion in *Wheatland Tube Co.*, which is specific to the AD order on CWP from Mexico, is misplaced.

These proceedings are separate from the order on CWP from
Thailand, which has different scope language and its own record that
differs from the records covered by the proceedings referenced by
Saha Thai. Specifically, the scope of the Mexican CWP order includes
the explicit exclusions for line pipe and dual- or triple-stenciled
products, which was the crux of the *Wheatland Tube Co*. litigation.
However, unlike the Mexican CWP order, there is no basis to find that
pipe which has been dual-stenciled as standard pipe and line pipe is
outside the scope of the *Order*.

*Id*. at 40776-40777 (internal citations omitted). As discussed in Section III.A.2.a,

*supra*, the ITC's injury determination underlying the Order on CWP Thailand was

predicated on imports of steel pipe physically indistinguishable from Saha Thai's

dual-stenciled pipe, and thus the imposition of antidumping duties on dual-

stenciled pipe is entirely appropriate. *See Shenyang Yuanda Aluminum Industry*

*Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (Ct. Int'l Trade

2014), *aff'd,* 776 F.3d 1351, 1355-56 (Fed. Cir. 2015).

## IV.  <u>**CONCLUSION**</u>

For the reasons outlined above, this Court should find that Commerce's

Remand Redetermination, filed under protest, is not supported by substantial

evidence and that Commerce's original Scope Determination should be sustained.

Respectfully submitted:

*/s/* Roger B. Schagrin, Esq.
Roger B. Schagrin, Esq.
Christopher T. Cloutier, Esq.
Luke A. Meisner, Esq.
**Schagrin Associates**
900 7th Street NW #500
Washington, DC 20001
(202) 223-1700

*Counsel to Wheatland Tube Company*

Dated: February 3, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-2181

**Short Case Caption:** Saha Thai Steel Pipe Public Company Limited v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓]   the filing has been prepared using a proportionally-spaced typeface and includes 5051 words.

[ ]   the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ]   the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/03/2023

Signature: /s/ Roger B. Schagrin

Name: Roger B. Schagrin

Save for Filing